Filed 12/20/24  P. v. Dillard CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ROYE DILLARD,<br><br>  Defendant and Appellant. | C100658<br><br>(Super. Ct. No. CR62963) |

A jury found defendant Roye Dillard guilty of the 1981 first degree premeditated murder of G.T. after kidnapping her from a convalescent hospital and raping her with a foreign object.  He received life without the possibility of parole, and this court affirmed the judgment on appeal.  (See *People v. Dillard* (Apr. 11, 1985, C012988) [nonpub. opn.] (*Dillard*).)

Defendant now appeals an order denying his petition for resentencing under Penal Code section 1172.6 (statutory section citations that follow are to the Penal Code unless

1

otherwise stated) at the prima facie stage after the trial court concluded defendant was ineligible for resentencing as a matter of law because the jury's verdicts and the jury instructions showed defendant was the actual killer who acted with a premeditated and deliberate intent to kill. Defendant's appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *People v. Delgadillo* (2022) 14 Cal.5th 216, asking this court to independently review the record to determine if there are any arguable errors that would result in a disposition more favorable to defendant.

Defendant filed a supplemental brief arguing: (1) that insufficient evidence supported the jury's burglary and kidnapping special circumstance findings; and (2) that the special circumstances did not preclude section 1172.6 relief as a matter of law.

We note that appointed counsel's brief also states that defendant appeals from a request for resentencing under section 1172.1. The notice of appeal, however, states only that defendant appeals from the "[d]enial of resentencing under Penal Code section 1172.6." Neither counsel nor defendant argue the court erred under section 1172.1, and we can locate no such request in the record on appeal. We therefore do not address section 1172.1 further.

Having considered defendant's supplemental brief in accordance with *Delgadillo*, we affirm the trial court's order.

FACTS AND HISTORY OF THE PROCEEDINGS

We summarize the pertinent facts from our prior opinion in *Dillard*, *supra*, C012988, affirming defendant's conviction. We do not rely upon this factual summary in reaching our decision, but instead paraphrase it to give context to our discussion.

A.     The Crimes and Convictions

In 1981, defendant worked the day shift as a cook at a convalescent hospital where the 92 or 93-year-old victim, G.T., was a resident. (See generally *Dillard*, *supra*, C012988.) At the time, defendant lived with J.G., a nursing assistant employed at the

2

same hospital and she let him drive her car, a 1972 Chevrolet. Defendant abruptly quit after being seen one night around 1:30 a.m. in street clothing in the hospital walking towards the south hall where G.T.'s room was located.

On the morning of November 8, 1981, defendant drove J.G. to the hospital in her car. J.G. quit later that morning and had to walk home after she was unable to reach defendant for a ride. After dropping J.G. off, defendant had driven to visit another woman, P.L. Defendant and P.L. spent the day together. That afternoon, defendant called J.G. several times to tell her he would be home later, at one point claiming he had locked the keys in the car so he would be late. Defendant dropped P.L. off at her home sometime between 7:30 and 8:00 p.m. and left shortly thereafter. Around that same time, defendant called J.G. and told her he would be on his way soon. J.G. went to bed after receiving defendant's last phone call.

Sometime between 8:30 and 9:00 p.m., a nurse's aide at the hospital heard a sliding glass door open and she saw the hand of a black person moving the drapes. She reported the incident to another nurse. While checking the hospital for intruders, another aide observed a car, which she believed looked similar to a 1968 Chevrolet, leaving the hospital parking lot with its lights off. At approximately 10:20 p.m., staff heard screams from the direction of the south hall and heard a fire door slam shut. G.T. had been abducted from her room; the perpetrator had gained access to the room through an open window. After hearing the screams, several aides observed a car leaving the parking lot, and the aide who had seen the car earlier after the "hand incident" said it was the same car that left both times.

Around 11:00 p.m., J.G. awoke to defendant washing himself in their bathroom. He left again to get cigarettes and was gone for about 20 or 30 minutes; when he returned, he had no cigarettes. Defendant went to bed and was awakened when police investigating G.T.'s disappearance came to his apartment door around midnight. Defendant denied knowing anything about her disappearance. Although J.G. told officers

3

her car had not been driven, officers noticed that the car, which generally matched the description of the car seen leaving the hospital parking lot, was still warm and an interior dome light was on. A rag seen inside the car appeared to have a blood-like substance on it. Officers returned to defendant's apartment, but neither defendant nor J.G. would answer the door. According to J.G., defendant prevented her from opening the door. Defendant eventually opened the door and he and J.G. were arrested. A few hours later, G.T. was discovered dead in a vacant lot near defendant's apartment; she had been severely beaten and the inside of her vagina had been penetrated by a blunt instrument that caused tears or lacerations.

Latent fingerprints found on the window screen as well as on G.T.'s window matched defendant's and a footprint on the windowsill matched the pattern of the shoes defendant had been wearing the night of the crimes. Hair consistent with G.T.'s was found in J.G.'s car and a blood stain soaked in the car seat was consistent with G.T.'s blood type; blood found on the shirt defendant was wearing that night matched G.T.'s and fibers from defendant's shirt were found on G.T.'s hospital gown. Defendant later attempted to have both J.G. and P.L. change their statements regarding the times he dropped P.L. off and returned home to J.G. the night of the murder. At trial, defendant's defense was diminished capacity; he claimed he drank and smoked marijuana and could not remember the incident.

A jury rejected the diminished capacity defense and found defendant guilty of committing premeditated and deliberate first degree murder (§ 187). It also found true the special circumstances that defendant committed the murder during a robbery and during a kidnapping (§ 190.2, subds. (17)(ii), 17(vii)). Defendant was also found guilty of first degree burglary (§ 459), kidnapping (§ 207), and rape with a foreign object (§ 289). Defendant admitted having three prior felony convictions for which he had served two prior prison terms. He received life without the possibility of parole for the murder consecutive to a determinate term of 10 years for the remaining offenses.

4

B.    Petition for Resentencing

In October 2022, defendant petitioned for resentencing under section 1172.6, asserting he could no longer be convicted of murder after changes made by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) to sections 188 and 189. The court appointed him counsel.

The People opposed the petition, arguing defendant was ineligible for relief as a matter of law because the record of conviction showed the jury found he committed the murder with premeditation and deliberation and was not instructed on aiding and abetting or the natural and probable consequences doctrine; thus, the jury necessarily found that defendant personally committed the murder with malice aforethought and malice was not imputed to defendant. They attached copies of this court's opinion in *Dillard*, *supra*, C012988, as well as jury instructions from its own files (apparently the majority of the trial court's files had been purged), including CALJIC No. 8.20 regarding premeditation and deliberation.

In reply, defendant argued he had made a sufficient prima facie case to proceed to a show cause hearing. Defendant also objected to the court relying on the factual summary in *Dillard*, *supra*, C012988, at the prima facie stage of review.

The People filed a supplemental response that attached an excerpt of the reporter's transcript in which the trial court directed the clerk to read to the jury the information charging defendant in the case. Defendant filed a supplemental reply arguing that it was unclear whether the jury was instructed with CALJIC No. 8.20, and that the trial court could not rely on *Dillard*, *supra*, C012988, to conclude the instruction had in fact been given; the only permissible use of *Dillard*, according to defendant, was to consider its procedural history of the case.

C.    Prima Facie Hearing

At the prima facie hearing, defense counsel argued that the jury was instructed on the felony-murder rule, making defendant prima facie eligible for relief, and that whether CALJIC No. 820 on premeditation and deliberation was given was a factual question that the trial court could not resolve at the prima facie stage.  Defense counsel's argument centered on the fact that the copy of CALJIC No. 8.20 submitted by the prosecution from its own files (since the trial court's records had been purged) did not include any check marks showing it was "[g]iven," "[g]iven as modified," [or] "[r]efused."  (Internal capitalization omitted.)

The prosecution argued that the decision in *Dillard* made clear that CALJIC No. 820 was given at trial as the parties argued about the premeditation and deliberation instructions and the sufficiency of the evidence to support the jury's finding on that point. Moreover, the information, as read by the trial court clerk to the jury, showed that defendant was the lone perpetrator charged with G.T.'s murder and that he proffered a diminished capacity defense, which would only apply to a person who actually killed the victim.

After taking the matter under submission, the trial court issued a written ruling denying the petition.  In doing so, the court relied on *Dillard*, *supra*, C012988, as part of the record of conviction, but noted it would not engage in improper factfinding based on the opinion.  According to *Dillard*, the jury specifically found the murder was committed with premeditation and deliberation after being instructed with CALJIC No. 8.20.  Under CALJIC No. 8.20 as given, the jury was told in part that if it found G.T.'s killing was "preceded and accomplished by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree."  Thus,

6

based on the instructions given and the jury's verdict regarding premeditation and deliberation, the trial court determined that the jury found defendant was the actual killer who acted with a deliberate intent to kill, making defendant ineligible for relief as a matter of law.

Defendant timely appealed.

## DISCUSSION

The independent review procedures outlined in *People v. Wende*, *supra*, 25 Cal.3d at pages 442 through 443 are not constitutionally required in an appeal from a postconviction order denying a section 1172.6 petition for resentencing. (*People v. Delgadillo*, *supra*, 14 Cal.5th at pp. 222, 224-225.) But where, like here, a defendant has been notified that his appeal may be dismissed pursuant to *Delgadillo*, and he files a supplemental brief raising various issues he wants considered, we must evaluate the specific arguments presented in the defendant's supplemental brief. (*Id.* at pp. 228-232.) However, we are not required to independently review the record, although we may exercise our discretion to do so. (*Ibid.*)

### A.     Applicable Legal Principles

Before turning to the issues defendant raises in his supplemental brief, we briefly outline the statutory scheme governing resentencing petitions. In its current form, section 1172.6 applies to those convicted of murder based on a felony-murder theory, the natural and probable consequences doctrine, or any other theory of imputed malice. (§ 1172.6, subd. (a).) To be eligible for relief, the petitioner must make a prima facie showing that he could not presently be convicted of murder under changes to these theories of murder liability made effective on January 1, 2019, by Senate Bill 1437 (2017-2018 Reg. Sess.). (§ 1172.6, subd. (a)(3).) "As relevant here, Senate Bill 1437 significantly limited the scope of the felony-murder rule to effectuate the Legislature's declared intent 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act

7

with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Strong* (2022) 13 Cal.5th 698, 707-708 (*Strong*).)

At the prima facie stage, the trial court may deny a resentencing petition only if the petitioner is ineligible for relief as a matter of law. (*Strong*, *supra*, 13 Cal.5th at p. 708.) This is a pure question of law we review de novo. (*People v. P.L.* (2022) 78 Cal.App.5th 1, 14.) While the trial court may look to the record of conviction after appointing defense counsel, the prima facie inquiry "is limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971-972.) At this early stage, the trial court should not engage in factfinding that involves the weighing of evidence or the exercise of discretion. (*Id.* at p. 972.) " 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Id.* at p. 971.) An appellate opinion is generally considered to be part of the record of conviction, although it may not supply all answers. (*Id.* at p. 972.)

With these principles in mind, we consider the arguments contained in defendant's supplemental brief.

*B.* <u>Analysis</u>

Defendant first asserts insufficient evidence supports the jury's true finding on the burglary-murder and kidnapping-murder special circumstances. This issue was already decided adversely to defendant in *Dillard*, *supra*, C012988 and, in any event, defendant's sufficiency of the evidence claim is not cognizable in an appeal from an order denying a resentencing petition under section 1172.6. (See *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [section 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial error"].)

8

Defendant next asserts that under our Supreme Court's decision in *Strong*, the jury's pre-*Banks*[1] and pre-*Clark*[2] special circumstance findings do not render him ineligible for resentencing relief under section 1172.6 as a matter of law. (*Strong*, *supra*, 13 Cal.5th at p. 710 ["[f]indings issued by a jury before *Banks* and *Clark* do not preclude a defendant from making out a prima facie case for relief under Senate Bill 1437"].) While this statement may be true, it is irrelevant.

Here, the trial court did not find defendant failed to make a prima facie case based on the jury's pre-*Banks* and pre-*Clark* special circumstance findings. Instead, the trial court found the jury's express finding that defendant acted with premeditation and deliberation conclusively showed that it found defendant guilty of first degree murder after finding that defendant deliberately intended to kill, and did kill, the victim. As the actual killer who acted with a premeditated and deliberate intent to kill, the trial court rightfully concluded defendant was not entitled to relief as a matter of law. (*Strong*, *supra*, 13 Cal.5th at pp. 707-708; *People v. Delgadillo*, *supra*, 14 Cal.5th at p. 233 [record of conviction showed the defendant, who was the actual killer and the only participant in the killing, was not entitled to relief under section 1172.6].) The court, therefore, did not err in denying the petition.

---

[1] *People v. Banks* (2015) 61 Cal.4th 788 [clarifying "under what circumstances an accomplice who lacks the intent to kill may qualify as a major participant so as to be statutorily eligible for the death penalty"].

[2] *People v. Clark* (2016) 63 Cal.4th 522 [clarifying what it means to act with reckless indifference to human life].

DISPOSITION

The order denying defendant's section 1172.6 petition is affirmed.

_____
HULL, Acting P. J.

We concur:

_____
DUARTE, J.

_____
WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.